UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELANIE FARMER, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:13-cv-01354-JMS-TAB |
| | ) | |
| TOWN OF SPEEDWAY, INDIANA, | ) | |
|     *Defendant*. | ) | |

**ORDER**

Plaintiff Melanie Farmer sued Defendant Town of Speedway, Indiana ("Town of Speedway") after she was terminated from her position of Deputy Clerk-Treasurer.  Ms. Farmer asserts claims against Town of Speedway under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a), and Section 504 of the Rehabilitation Act.  [Filing No. 25 at 5-6.]  Presently pending before the Court is Town of Speedway's Motion for Summary Judgment on all of Ms. Farmer's claims.  [Filing No. 27.]  For the reasons explained below, Town of Speedway's Motion for Summary Judgment is **GRANTED**.

**I.**
**PROCEDURAL STANDARDS AND COMPLIANCE**

**A.**    **Summary Judgment Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

**B.      Compliance with the Local Rules**

The Court's review of the parties' briefs was made unnecessarily cumbersome due to both parties' failure to comply with the Local Rules when making factual assertions. Local Rule 56-1(e) provides:

> A party must support *each fact* the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. The evidence must be in the record or in an appendix to the brief. The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.

Local Rule 56-1(e) (emphasis added). Despite the clear language of this rule—which requires every factual assertion in a brief to be accompanied by a citation to record evidence—both parties cite evidence in their factual background section, but rarely, if ever, cite evidence supporting the factual assertions in the argument sections of their briefs. This is in clear violation of Local Rule 56-1(e), and it would be well within the Court's discretion to disregard all factual assertions not accompanied by the required citation. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has "repeatedly upheld the strict enforcement of [the local] rules"). But given that both parties failed to comply with the rule and the Court was able to locate the determinative evidence after considerable effort, the Court will excuse the parties' non-compliance in this instance.

The Court also notes that the parties' citation practices were each deficient in another manner. Turning first to Town of Speedway, not only did Town of Speedway rarely, if ever, cite

evidence in the argument section of its brief, but its citation method in the factual section of the brief is inappropriate and unhelpful.  Instead of including a citation at the end of each sentence, Town of Speedway includes an often lengthy string citation at the end of each paragraph.  This too violates the requirements of Local Rule 56-1(e), as "each fact" must be accompanied by a citation to record evidence.  Although excused in this instance, Town of Speedway should not follow this citation practice in the future, as it leaves the Court to guess as to which citation corresponds with which factual assertion.

Turning next to Ms. Farmer, her citation format does not comply with the requirements of this Court's Practices and Procedures.[1]  Under the heading "Citation Form," the Court provides: "When citing documents that have been electronically filed, counsel should cite the docket number, the attachment number (if any), and the applicable .pdf page.  For example, '[dkt. 25-2 at 5]' would refer to page five of attachment two to the item filed as docket number 25."  Instead of following this citation format, Ms. Farmer only cites the deposition page or declaration paragraph—*e.g.*, "[Zishka Dep. pp. 12, 14-16]."  This requires the Court to locate the document containing the cited information.  To be sure, this would not be difficult for the Court to do if there was only one exhibit for each deposition.  But each party submitted their own deposition excerpts, and Ms. Farmer cites pages of depositions that are not included in the excerpts she submitted.  This made the review of her brief unnecessarily cumbersome, and could have been easily avoided.  In the future, Ms. Farmer should ensure that she follows the Court's Practices and Procedures.

---

[1] The Court's Practices and Procedures are available online at:
*http://www.insd.uscourts.gov/sites/insd/files/Courtroom%20Procedures%20JMS.pdf*.

In sum, the parties are cautioned that compliance the Local Rules and this Court's Practices and Procedures is mandatory, and there can be serious consequences for non-compliance. *See Waldridge*, 24 F.3d at 922.

## II.
### BACKGROUND

The parties each submit extensive evidence in support of their respective positions. Much of this evidence, however, is unnecessary for the Court to decide Town of Speedway's Motion for Summary Judgment. Therefore, the Court sets forth only the facts necessary for a basic understanding of the individuals and events relevant to this suit.

Ms. Farmer was hired in May 2002 as a Deputy Clerk-Treasurer in Town of Speedway, Indiana. [Filing No. 31-2 at 2.] She was initially assigned the job of Payroll Administrator/HR Coordinator. [Filing No. 28-21 at 11.] During Ms. Farmer's employment, Sharon Zishka was the Clerk-Treasurer—which is an elected position, *see* Ind. Code § 36-5-6-4—and Ms. Farmer's direct supervisor. [Filing No. 26 at 2; Filing No. 28-1 at 1-2.] According to Ms. Farmer, Ms. Zishka regularly treated her and other employees in the office poorly. [*See, e.g.*, Filing No. 28-21 at 13-14.] The harsh treatment began as soon as Ms. Farmer commenced her employment, but became "more abusive" in 2005 when her husband, Dean Farmer, left his position as a member of Town of Speedway's Town Council. [Filing No. 28-21 at 16-18.]

During Ms. Farmer's time as the Payroll Administrator, Ms. Zishka blamed Ms. Farmer for a litany of payroll errors, [*see, e.g.*, Filing No. 28-1 at 3-4], but Ms. Farmer disputes whether those errors were actually her fault, [*see, e.g.*, Filing No. 28-21 at 51-52]. For example, in June 2009 and March 2010, Ms. Farmer deposited payroll funds to Town of Speedway's general fund account instead of into its payroll account, leaving the payroll account overdrawn by, in the latter instance, over $90,000. [Filing No. 28-1 at 3.] Moreover, in early 2011, it was discovered that

coding errors were made regarding Town of Speedway employees' retirement plans and dental insurance plans, which together cost the Clerk-Treasurer's Office and Town of Speedway over $30,000. [Filing No. 28-1 at 3-4.] Ms. Zishka believed these errors were caused by Ms. Farmer's provision of incorrect information to individual in charge of the payroll software, while Ms. Farmer stated that the errors were not her fault. [Filing No. 28-1 at 5.]

Meetings were held regarding these errors in April 2011, and Ms. Farmer continued to state that the errors were not her fault. [Filing No. 28-1 at 5-6.] Because of these errors, on June 1, 2011, Ms. Zishka transferred Ms. Farmer to the Permit Specialist position, which was seen as a demotion in that it decreased Ms. Farmer's salary and removed her from her position as Chief Deputy Clerk-Treasurer. [Filing No. 28-1 at 6; Filing No. 28-21 at 84; Filing No. 28-21 at 96.] Ms. Zishka felt this demotion was necessary because she "had lost confidence in [Ms. Farmer's] ability to handle the payroll due to the serious nature of her errors and apparent[] unwillingness to accept responsibility for [them]." [Filing No. 28-1 at 6.] Ms. Zishka believed these errors were alone grounds for terminating Ms. Farmer's employment, but at the time she did not "want to take such a drastic step." [Filing No. 28-1 at 6.]

According to Ms. Zishka, Ms. Farmer's work performance "remained unsatisfactory" in her new position, [Filing No. 28-1 at 8], but Ms. Farmer disputes this as well, [*see* Filing No. 28-21 at 142-43]. Ms. Zishka believed that Ms. Farmer was behind on her permitting work, and after a year as the Permit Specialist, Ms. Zishka did not see any evidence that her performance would improve. [Filing No. 28-1 at 7-8.] Therefore, in the summer of 2012, Ms. Zishka again considered terminating Ms. Farmer. [Filing No. 28-1 at 8.] But given that Ms. Zishka "was still attempting to get [Ms.] Farmer to improve her productivity," and that Ms. Zishka was taking an extended

leave beginning in July 2012 and did not want to leave the office short an employee, she decided against terminating Ms. Farmer's employment. [Filing No. 28-1 at 8.]

Ms. Zishka was on leave from July 2012 until early November 2012. [Filing No. 28-1 at 8.] During her leave, the consulting firm Crowe Horwath was hired to provide consulting services. [Filing No. 28-1 at 8.] John Johnson from Crowe Horwath was assigned to work at the Clerk-Treasurer's Office. [Filing No. 28-1 at 8.] Around October 2012, the new Payroll Administrator resigned and Mr. Johnson directed Ms. Farmer to handle the payroll duties. [Filing No. 28-1 at 9.] According to Mr. Johnson, Ms. Zishka—who was still on leave—was not happy with this reassignment, but ultimately approved it. [Filing No. 28-26 at 28.] Ms. Zishka subsequently learned of further payroll errors, and she believed Ms. Farmer was responsible for them. [Filing No. 28-1 at 9.] These errors included an overpayment of employer withholding taxes of nearly $250,000. [Filing No. 28-1 at 9.]

Upon Ms. Zishka's return from leave, she continued to believe that Ms. Farmer's work performance was inadequate because her assigned permitting work was not complete. [Filing No. 28-1 at 9-10.] Ms. Farmer disputes this characterization of her performance, as it was "unreasonable" for Ms. Zishka to expect Ms. Farmer to be able to perform all of the responsibilities of payroll and permits. [Filing No. 31-5.] Nevertheless, on December 5, 2012, Mr. Johnson and Ms. Zishka emailed an attorney to inquire whether they could terminate Ms. Farmer's employment due to her poor performance even though she was "off [work] due to illness," and the attorney replied that they could. [Filing No. 28-15 at 1-2.]

Shortly thereafter—the parties dispute precisely when—Ms. Zishka finally decided to terminate Ms. Farmer's employment.[2] The undisputed events leading up to Ms. Farmer's termination

---

[2] The Court discusses this dispute in more detail in Part III below.

are as follows: Ms. Farmer went to the doctor for an MRI on December 12, 2012. [Filing No. 28-21 at 162.] On December 13, while Ms. Farmer was home during her lunch hour, her medical provider informed her that they had found "nodules" in her lungs, throat, and esophagus, which could be cancerous. [Filing No. 28-21 at 162-164.] Learning this information upset Ms. Farmer, therefore at 12:30 p.m., her husband called the Clerk-Treasurer's Office to inform them that Ms. Farmer would not be returning to work that day. [Filing No. 28-21 at 164; Filing No. 31-1 at 2.] Mr. Johnson spoke with Mr. Farmer, and Mr. Farmer said that Ms. Farmer was upset because she just found out that she "had nodules on her lungs, throat, and esophagus," and thus would not be able to return to work that day. [Filing No. 31-1 at 2.] According to Mr. Farmer, Mr. Johnson "responded by saying that is okay, they would be a person short, but they would manage" and that he would "let the others know." [Filing No. 31-1 at 2.]

According to Ms. Zishka, Mr. Johnson informed her that he spoke to Mr. Farmer who told him that Ms. Farmer "would not return to work that afternoon," but that Mr. Johnson did not tell her why Ms. Farmer was not returning or inform her about the results of Ms. Farmer's MRI. [Filing No. 28-1 at 11.] Mr. Johnson only remembers receiving a call from Mr. Farmer; he does not remember what he specifically conveyed to Ms. Zishka about the call. [See Filing No. 28-26 at 10-12.] By 2:45 p.m. on December 13, Ms. Zishka decided to terminate Ms. Farmer's employment; she called Town of Speedway Police Chief James Campbell and requested that a police officer be present when Ms. Zishka terminated Ms. Farmer in the afternoon of December 14. [Filing No. 28-1 at 11; see Filing No. 28-29 at 1.]

The next day, December 14, Ms. Farmer arrived at work and printed out FMLA paperwork. [Filing No. 28-21 at 169.] Once Ms. Zishka arrived at work, Ms. Farmer explained to Ms. Zishka her MRI results and why she did not return to work the previous day. [Filing No. 28-21 at 171.]

Specifically, Ms. Farmer told Ms. Zishka that she did not "know where this is going. Don't know if I'm going to need time off, but I've got this hanging over me. And I think just to cover my tail, I want to go ahead and fill out FMLA paperwork." [Filing No. 28-21 at 171.] Ms. Zishka responded, "I wouldn't go borrowing trouble,"[3] but Ms. Farmer was unsure what Ms. Zishka meant. [Filing No. 28-21 at 173.]

At the end of the work day, Ms. Farmer was in Ms. Zishka's office, and Ms. Zishka called Mr. Johnson into her office for a termination meeting. [Filing No. 28-1 at 12; Filing No. 28-21 at 175-76.] Ms. Zishka told Ms. Farmer that she had "not been doing [her] work," specifically her permitting tasks, and that her employment was therefore terminated. [Filing No. 28-1 at 1; Filing No. 28-21 at 175-76.]

Following her termination, Ms. Farmer filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). [Filing No. 25 at 2; Filing No. 26 at 2.] The EEOC issued Ms. Farmer a right to sue letter, [Filing No. 25 at 2; Filing No. 26 at 2], and this lawsuit followed.

### III.
#### DISCUSSION

Ms. Farmer asserts claims against Town of Speedway under the ADA, the FMLA, and Section 504 of the Rehabilitation Act. [Filing No. 25 at 5-6.] The Court will address Ms. Farmer's ADA and FLMA claims together, before turning to her Rehabilitation Act claim.

#### A.      ADA & FMLA Claims

Town of Speedway moves for summary judgment on Ms. Farmer's ADA and FMLA claims on two independent grounds: (1) Town of Speedway is not Ms. Farmer's employer, the

---

[3] Ms. Zishka denies making this statement, [Filing No. 28-1 at 12], but the Court must take Ms. Farmer's testimony as true at this stage in the litigation.

Clerk-Treasurer is, and thus Town of Speedway cannot be liable for any violations of the ADA or FMLA, [Filing No. 29 at 12-16]; and (2) Ms. Zishka decided to terminate Ms. Farmer before Ms. Zishka knew of Ms. Farmer's MRI results and before Ms. Farmer mentioned FMLA leave, which precludes her from proving that alleged disability or the exercise of her FMLA rights caused Ms. Zishka to terminate her employment, [Filing No. 29 at 16-28]. The Court addresses each basis for summary judgment in turn.

### 1. Town of Speedway is Not Ms. Farmer's Employer

Town of Speedway contends that Indiana law makes clear that Ms. Farmer was employed by the Clerk-Treasurer rather than Town of Speedway. [Filing No. 29 at 13.] And because the Clerk-Treasurer is not subject to the ADA or FMLA, says Town of Speedway, both of Ms. Farmer's claims must fail. [Filing No. 29 at 15-16.] Ms. Farmer disagrees, arguing that under either of two legal tests Town of Speedway is considered her employer. [Filing No. 30 at 13-17.] Alternatively, Ms. Farmer contends that Town of Speedway should be equitably estopped from arguing that Ms. Farmer sued the wrong entity because Town of Speedway "never made this argument during the EEOC process." [Filing No. 30 at 17-18.] Town of Speedway replies that neither of the two tests on which Ms. Farmer relies apply, and that equitable estoppel does not apply in this case. [Filing No. 34 at 2-9.] The Court addresses these arguments in reverse order.

### a. Equitable estoppel does not apply

Ms. Farmer argues that equitable estoppel prevents Town of Speedway from maintaining that Ms. Farmer sued the wrong entity because Town of Speedway did not raise this argument during the EEOC proceedings. [Filing No. 30 at 17 (citing *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)).] This argument fails for at least two reasons. First, the lone authority on which Ms. Farmer relies reveals that the doctrine of equitable estoppel does not provide the

- 10 -

relief Ms. Farmer seeks; "[e]quitable estoppel allows delay in suing when the defendant . . . has taken steps to prevent the plaintiff from suing in time." *LaBonte*, 233 F.3d at 1053 (citation and quotation marks omitted); *see Teamsters & Employers Welfare Trust of Ill. V. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002) ("The doctrine of equitable estoppel allows the plaintiff to extend the statute of limitations if the defendant has done something that made the plaintiff reasonably believe that he had more time to sue."). Thus, Ms. Farmer's reliance on equitable estoppel is misguided: the lone authority on which she relies does not relate to the necessity of preserving arguments by raising them during administrative proceedings.

Second, Ms. Farmer does not point the Court to any authority for the proposition that defenses not raised before the EEOC cannot be raised in litigation.[4] Town of Speedway, however, points to other courts that have rejected similar arguments. [Filing No. 34 at 8-9.] For example, *Enright v. Ill. State Police*, 19 F.Supp.2d 884 (N.D. Ill. 1998), concluded that a statute of limitations defense was not waived due to the defendant's failure to raise it before the EEOC. *Id.* at 888.

---

[4] The parties also dispute whether, if Town of Speedway and the Clerk-Treasurer are treated as separate entities, Ms. Farmer would have rights under the Governmental Employee Rights Act ("GERA") of 1991, 42 U.S.C. § 2000e-16c *et seq.*, [Filing No. 30 at 17-18; Filing No. 34 at 8-9], which "extends workplace discrimination rights to certain government employees exempted by [other employment laws]." *Marion Cnty. Coroner's Office v. EEOC*, 612 F.3d 924, 928 n.4 (7th Cir. 2010). Specifically, Ms. Farmer argues that Town of Speedway should not be able to contend that she sued the wrong entity now, because if it had adequately raised this issue before the EEOC, then she could have asserted her GERA rights and the necessary administrative proceedings would have occurred. [Filing No. 30 at 17-18]; *see Marion Cnty. Coroner's Office*, 612 F.3d at 928 (stating that the plaintiff was covered under GERA and "[a]s a result, his charge [of discrimination] was processed through an administrative proceeding before the EEOC") (citing 42 U.S.C. § 2000e-16c(b)(1)). But again, Ms. Farmer does not point to any authority to support her position that Town of Speedway had to raise this issue before the EEOC. Now realizing that she did not sue the proper entity, she cannot assert a claim under GERA that was not addressed by an ALJ or the EEOC, or raised in her Complaint or Amended Complaint. *See Gross v. White*, 173 Fed. Appx. 484, 487-88 (7th Cir. 2006) (declining to consider claims not raised in the plaintiff's EEOC charge or amended complaint); *cf. Marion Cnty. Coroner's Office*, 612 F.3d at 929 (setting forth how a Court reviews an ALJ's GERA decision) (citing 42 U.S.C. § 2000e-16c(d)).

The Court in *Enright* described the plaintiff's argument to the contrary as "frivolous," noting that there is "no statutory requirement, or supporting case law, that requires a defendant to raise the statute of limitations defense at the investigation stage in order to preserve the defense at the litigation stage." *Id.* at 888-89.

Town of Speedway raised the issue that it was not Ms. Farmer's employer in both its Answer to the Complaint and its Answer to the Amended Complaint. [Filing No. 12 at 1; Filing No. 26 at 1.] Ms. Farmer has not shown that equitable estoppel—or any other legal authority—required Town of Speedway to raise it during the administrative process. Accordingly, the Court will address Town of Speedway's argument that it is not Ms. Farmer's employer.

<u>b.</u>     <u>Town of Speedway is Not Ms. Farmer's Employer</u>

Ms. Farmer argues that she properly sued Town of Speedway because it, not the Clerk-Treasurer, is her employer. [Filing No. 30 at 13-17.] Town of Speedway disagrees, arguing that Indiana law makes clear that Town of Speedway and the Clerk-Treasurer are distinct entities and that Ms. Farmer works for the latter.

"Employee status for purposes of Title VII and cognate laws protecting employees [is] determined by the principles of agency law rather than labels." *EEOC v. Severn Trent Servs., Inc.,* *358 F.3d 438, 445 (7th Cir. 2004)*. Agency principles require the Court to consider the following five factors, the first of which "is the most significant": "(1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies

and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job."[5] *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 550 (7th Cir. 2002).

The parties only discuss the first, third, and fourth factors.[6]  Regarding the third and fourth factors, it is undisputed that the Clerk-Treasurer's Office was funded through fees collected by Town of Speedway, [Filing No. 31-2 at 19], and that Ms. Farmer's W-2 and direct deposit statements reflect that she was paid by Town of Speedway, [Filing No. 31-2 at 18].  These two factors, therefore, weigh in favor of finding Town of Speedway to be Ms. Farmer's employer.

As to the first factor, Ms. Farmer argues that Town of Speedway's "town council, by statute, had approval authority for the hiring of all deputy clerk-treasurers" and that Ms. Zishka "had a pattern and practice of recommending terminations to the town council."  [Filing No. 30 at 14.]  Although Ms. Farmer presents evidence by way of Mr. Farmer's declaration that the Clerk-Treasurer "was required to obtain approval from the Town Council for the hiring of all employees," [Filing No. 31-1 at 1], Town of Speedway points to Indiana law, which proves otherwise.

_____

[5] In addition to looking at the principles of agency law, Ms. Farmer suggests that Town of Speedway is her employer because she can "pierc[e] the corporate veil between the Town of Speedway and the clerk-treasurer's department."  [Filing No. 30 at 15 (citing *Papa v. Katy Industries, Inc.*, 166 F.3d 937 (7th Cir. 1999)).]  Piercing the corporate veil in an employment case allows the plaintiff to sue one entity even though an affiliated entity is her actual employer.  *See Worth v. Tyer*, 276 F.3d 249, 259-60 (7th Cir. 2001).  In such a situation, the corporate veil is pierced only when "corporate formalities are ignored and the actions of one company can accrue to another."  *Id.* at 260.  However, as the name of the doctrine and its corresponding legal test suggest, the doctrine focuses on whether *corporate* formalities are followed.  But Town of Speedway and the Clerk-Treasurer's Office are governmental entities, not corporations, whose separate nature is established by statute.  Ms. Farmer has not cited any authority extending this doctrine from corporations to governmental entities.  Accordingly, the Court finds this doctrine is inapplicable.

[6] Notably, the existence of factors pointing in different directions does not mean that a question of fact exists that precludes summary judgment, as "[t]he ultimate question of whether an individual is an employee . . . is a legal conclusion which involves an application of the law to the facts."  *EEOC v. North Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998) (rejecting the plaintiff's argument that "where the record contains at least some facts that favor a finding that the individual in question is an employee, there is a material factual dispute precluding summary judgment for the defendant").

- 13 -

Under Indiana law, the Clerk-Treasurer is an independently elected position distinct from the Town Council.  *See* Ind. Code § 36-5-6-4.  Moreover, Indiana Code § 36-5-6-7(a) provides: "The clerk-treasurer shall appoint the number of deputies and employees needed for the effective operation of the office, with the approval of the town legislative body.  The clerk-treasurer's deputies and employees serve at the clerk-treasurer's pleasure."  This statute makes clear that the Town Council "approv[es]" only the "number" of deputies and employees the Clerk-Treasurer may hire, not, as Ms. Farmer contends, that the Town Council approves each hiring decision made by the Clerk-Treasurer.  *See id.*

But, in any event, the parties' debate over who controls hiring decisions distracts from the primary inquiry mandated by the first factor, which is "the extent of the employer's control and supervision over the worker."  *Hojnacki*, 285 F.3d at 550; *cf. North Knox Sch. Corp.*, 154 F.3d at 749 (rejecting the argument that a school bus driver was an employee of the school district because the school district had the power to terminate the employee under certain circumstances delineated by Indiana law).  The Seventh Circuit has repeatedly found that the first factor weighs in favor of finding that an individual is not an employee of an entity even when the entity can control certain aspects of the individual's performance.  *See Hojnacki*, 285 F.3d at 550 (holding that the first factor weighed against finding the plaintiff an employee of the department of corrections even though the department "controlled [the plaintiff's] work through the various policies and procedures with which the [department] required her to comply" because such policies "merely specify her duties . . . ; they do not control the manner in which she is to perform those duties"); *North Knox Sch. Corp.*, 154 F.3d at 748 (holding that the first factor weighed against finding that a school bus driver was an employee of the school district because "the record . . . fails to show that [the

school district] exercised any significant control over the bus drivers beyond the 'control' mandated by statute or the 'control' set by the obligations of the contract"); *see also Ost. v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438-39 (7th Cir. 1996) (holding that the first factor weighed against finding an employer-employee relationship "because the details concerning performance of the work remained essentially within the control of the [employee]"). Here, Ms. Farmer has an even weaker claim that the first factor favors her position than in the above-cited cases, as Indiana law makes clear that the Clerk-Treasurer has unfettered control and supervisory responsibility over employees—put differently, Town of Speedway has absolutely no control or supervisory authority over the Clerk-Treasurer's employees such as Ms. Farmer. *See* Ind. Code § 36-5-6-7(a) ("The clerk-treasurer's deputies and employees serve at the clerk-treasurer's pleasure."). Accordingly, this factor weighs strongly against finding that Ms. Farmer was Town of Speedway's employee.

In sum, two factors weigh in Ms. Farmer's favor, but the first factor—which is "the most significant [factor] in determining the employment status," *Hojnacki*, 285 F.3d at 550—strongly weighs against her position. Indeed, with respect to the first factor, the Seventh Circuit has stated that "[f]or an employer-employee relationship to exist . . . the employer must have 'the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved . . . .'" *Id.* at 551 (quoting *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 493 (7th Cir. 1997)). Given the weight placed on this factor by the Seventh Circuit in conjunction with the fact that it heavily and unequivocally weighs against finding an employer-employee relationship between Ms. Farmer and Town of Speedway, the Court concludes that Ms. Farmer is not an employee of Town of Speedway. Accordingly, Town of

Speedway is not Ms. Farmer's "employer" under the ADA or FMLA,[7] and thus is entitled to summary judgment on those claims. *See Dactelides v. Bd. of Sch. Trustees of South Bend Comm'n Sch. Corp., 562 Fed. Appx. 534, 536 (7th Cir. 2014)* (holding that because the defendants "were not themselves [the plaintiff's] employer" they "cannot be held liable under the ADA"); *Holder v. Ill. Dep't of Corrections, 751 F.3d 486, 493 (7th Cir. 2014)* (holding that to establish an FMLA claim, the plaintiff must prove that "his employer . . . denied him FMLA benefits to which he was entitled").

### 2. *Ms. Farmer's ADA and FLMA claims fail on the merits*

Even if Town of Speedway should be treated as Ms. Farmer's employer, it would still be entitled to summary judgment on Ms. Farmer's ADA and FLMA claims. The reason for this is straightforward: the undisputed evidence shows that Ms. Zishka decided to terminate Ms. Farmer's employment before Ms. Zishka knew that Ms. Farmer might have cancer or that Ms. Farmer might want to exercise her FMLA rights, which precludes Ms. Farmer from proving the causation element of her claims. This provides an alternative ground for summary judgment.

The basis for Ms. Farmer's ADA and FLMA claims is Ms. Farmer's contention that Ms. Zishka thought Ms. Farmer had cancer due to the MRI revealing nodules, and Ms. Zishka therefore "terminated [Ms.] Farmer in order to avoid her obligations under the ADA[] and FMLA."[8] [Filing

---

[7] Town of Speedway also argues that, to the extent the Amended Complaint could be read as asserting claims against the Clerk-Treasurer, the Clerk-Treasurer does not have a sufficient number of employees to constitute an "employer" under the ADA or FMLA. [Filing No. 29 at 15.] Because Town of Speedway, not the Clerk-Treasurer, is a defendant in this case, the Court need not delve into this issue.

[8] It is undisputed that Ms. Farmer's nodules "were ultimately non-cancerous," but Ms. Farmer advances a "regarded-as [disabled] claim under the ADA." [Filing No. 30 at 18.]

No. 30 at 19.] To succeed on her claims, Ms. Farmer must produce evidence that Ms. Zishka[9] terminated her employment because Ms. Farmer was regarded as having cancer (for the ADA claim) or because Ms. Farmer gave Ms. Zishka notice that she intended to exercise her FMLA rights (for the FMLA interference and retaliation claims)—in other words, Ms. Farmer must prove causation between her disability (being regarded as having cancer) or desire to use her FMLA right and the decision to terminate her employment. *See Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603-04 (7th Cir. 2012) (stating that the ADA requires a plaintiff to prove but-for causation); *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) (stating that causation is an element of an FMLA retaliation claim); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827-28 (7th Cir. 2012) (holding that an FMLA interference claim cannot be sustained when the decision to terminate the plaintiff's employment was made before the plaintiff requested additional FMLA leave).

Based on the evidence adduced by Ms. Farmer, Town of Speedway is correct that no reasonable jury could conclude that the requisite causation exists. The relevant evidence is as follows: On December 13 at 12:30 p.m., Mr. Farmer spoke with Mr. Johnson and informed him that Ms. Farmer may have nodules on her lungs, throat, and esophagus and thus would not be able to return to work that day. [Filing No. 28-21 at 164; Filing No. 31-1 at 2.] Mr. Johnson "responded by saying that is okay, they would be a person short, but they would manage" and that he would "let the others know." [Filing No. 31-1 at 2.] But there is no evidence that Mr. Johnson ever informed Ms. Zishka of Ms. Farmer's health condition that day. Mr. Johnson does not remember whether he conveyed any information about Ms. Farmer's health condition to Ms. Zishka, [*see* Filing No. 28-26 at 10-12], and Ms. Zishka affirmatively states that Mr. Johnson did not inform her why Ms.

---

[9] The parties do not dispute that Ms. Zishka, as Clerk-Treasurer, was at all times the relevant decisionmaker. [*See* Filing No. 30 at 7.]

Farmer would not be returning to work, [Filing No. 28-1 at 11].  Without knowing that Ms. Farmer might have cancer, Ms. Zishka decided that same afternoon, December 13, to terminate Ms. Farmer's employment when she returned to work the following day; Ms. Zishka called Town of Speedway Police Chief James Campbell and requested that a police officer be present December 14 for the termination of Ms. Farmer's employment.  [Filing No. 28-1 at 11; *see* Filing No. 28-29 at 1.]  When Ms. Farmer arrived at work the morning of December 14, she printed out FMLA paperwork and explained her medical issues to Ms. Zishka.  [Filing No. 28-21 at 169-71.]  As was planned the day before, Ms. Zishka terminated Ms. Farmer's employment that afternoon.  [Filing No. 28-1 at 1; Filing No. 28-21 at 175-76.]

Despite the lack of affirmative evidence that Ms. Zishka knew of Ms. Farmer's MRI results on December 13—the day that Ms. Zishka decided to terminate Ms. Farmer's employment—Ms. Farmer contends that it is reasonable to infer that she did because Mr. Johnson told Mr. Farmer that he would "let the others know."  [Filing No. 30 at 6 (citing Filing No. 31-1 at 2); *see* Filing No. 30 at 20.]  While Ms. Zishka acknowledges that Mr. Johnson informed her that Ms. Farmer would not return to work on December 13, [Filing No. 28-1 at 11], there is no evidence that Mr. Johnson explained to her why that was the case.  Indeed, Ms. Zishka affirmatively attests that Mr. Johnson "did not tell [her] why [Ms.] Farmer was not returning," [Filing No. 28-1 at 11], and Mr. Johnson could not "recall" what he conveyed to Ms. Zishka, [Filing No. 28-26 at 11].  Thus the inference that Ms. Farmer asks the Court to draw from Mr. Johnson's ambiguous statement that he would "let the others know"—that Mr. Johnson told Ms. Zishka about Ms. Farmer's MRI results, rather than simply that she would not return to work—is supported only by Ms. Farmer's speculation that Mr. Johnson did so.  But even at the summary judgment stage, the Court "will not draw inferences 'that are supported by only speculation or conjecture.'" *Collins v. Am. Red Cross,*

- 18 -

*715 F.3d 994, 997 (7th Cir. 2013)* (quoting *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)*).  Simply put, even if Mr. Johnson's comment to Mr. Farmer meant that he intended to tell Ms. Zishka about Ms. Farmer's MRI results, there is no evidence whatsoever that he did; there is only undisputed evidence that he did not.  Faced with Ms. Zishka's uncontroverted testimony that she did not know of Ms. Farmer's MRI results, Ms. Farmer essentially asks the Court to infer that Ms. Zishka is lying.  But when, as here, "challenges to witness' credibility are all that a plaintiff relies on, and [s]he has shown no independent facts—no proof—to support h[er] claims, summary judgment in favor of the defendant is proper."  *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *see Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").  Thus Ms. Farmer's speculation that Mr. Johnson informed Ms. Zishka of Ms. Farmer's health concerns is insufficient to avoid summary judgment.  *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 716 (7th Cir. 2013) ("[G]uesswork and speculation are not enough to avoid summary judgment.") (citation and internal quotation marks omitted); *see also Trentadue v. Redmon*, 619 F.3d 648, 653 (7th Cir. 2010) (holding that what "is uncontroverted as an evidentiary matter . . . cannot be overcome by mere speculation").

In sum, there is no evidence that Ms. Zishka knew of Ms. Farmer's MRI results when she made the decision to terminate her employment, and Ms. Farmer's contention that she did is supported only by conjecture, rather than evidence.  Further, the undisputed evidence is that Ms. Farmer first mentioned the possible need to take FMLA leave on December 14, which is after Ms. Zishka's decision to terminate Ms. Farmer's employment was already made.  Accordingly, because Ms. Farmer cannot establish the causation element of her ADA claim or either of her FMLA claims, Town of Speedway is entitled to summary judgment on these claims for this reason as well.

### B. Rehabilitation Act Claim

Ms. Farmer brings a claim under Section 504 of the Rehabilitation Act, alleging that Town of Speedway violated the Act by terminating her because she suffers from Chron's disease. [Filing No. 25 at 6.] Town of Speedway moves for summary judgment on this claim, arguing that: (1) the Clerk-Treasurer's Office does not receive federal funding and thus is not subject to the Rehabilitation Act; and (2) even if the Rehabilitation Act applies, her claim fails on the merits. [Filing No. 29 at 29-32.] Because the Court ultimately agrees with Town of Speedway's first argument, it need not reach the merits of Ms. Farmer's Rehabilitation Act claim.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794; *see CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). This section "is by its terms program-specific" in that "[i]t proscribes discrimination only with respect to 'programs' or 'activities' receiving federal financial assistance." *Foss v. City of Chicago*, 817 F.2d 34, 34-35 (7th Cir. 1987). The Rehabilitation Act defines "program or activity" to includes, among other things, "all of the operations of . . . a department, agency, special purposes district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(a). The relief under the Rehabilitation Act and the ADA is "coextensive," and the "analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds." *Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012).

Town of Speedway argues that, although some of its departments receive federal funds, the Clerk-Treasurer's office does not and thus is not subject to the requirements of the Rehabilitation

Act. [Filing No. 29 at 29-30.] In response, Ms. Farmer states only that she "adopts all evidence and argument related to [her above discussed position that Town of Speedway is her employer]. [Town of Speedway] concedes . . . [it] received [federal] funding, so if [Town of Speedway is her employer], then the Rehabilitation Act claim may continue forward." [Filing No. 30 at 28.] Town of Speedway replies that even if the Court accepts Ms. Farmer's earlier argument and concludes that Town of Speedway is her employer, it does not follow that the Clerk-Treasurer's Office is subject to the Rehabilitation Act, as "it is not a participant in federal financial assistance simply because other departments or agencies [of Town of Speedway] receive federal funds." [Filing No. 34 at 14.]

The Court need not discuss at length the flaws with Ms. Farmer's position. The undisputed evidence shows that, "[w]hile various [Town of Speedway] departments and agencies receive federal funding, the clerk-treasurer's office receives no federal funds." [Filing No. 28-1 at 1.] Ms. Farmer does not confront this evidence. Instead, to demonstrate that she was employed by a program or activity receiving federal funds, Ms. Farmer relies solely on her earlier arguments that Town of Speedway is her employer rather than the Clerk-Treasurer, and because Town of Speedway receives federal funding, this requirement of the Rehabilitation Act is met. [Filing No. 30 at 28.] But as discussed above, the Court has already rejected these arguments, and concluded that Town of Speedway is not Ms. Farmer's employer. In other words, the Court has already rejected Ms. Farmer's only argument in support of her claim.

Moreover, Town of Speedway is correct that even if it is Ms. Farmer's employer, that is not the end of the matter for the purposes of the Rehabilitation Act. The employer inquiry discussed above is guided by agency principles, while Town of Speedway contends that even if it was considered her employer, the Court must examine whether the specific department or agency

in which Ms. Farmer works—the Clerk-Treasurer's Office—receives federal funding in order to determine if the Rehabilitation Act applies. Seventh Circuit law supports Town of Speedway's position. *See Foss*, 817 F.2d at 35 (affirming the district court's decision and stating that the Rehabilitation Act is "program-specific" and that "[t]he district court carefully analyzed the types of federal funds received by the City of Chicago and the Chicago Fire Department and concluded that neither entity could be characterized as a 'program or activity' for purposes of § 504, and that the plaintiff's employment had no connection with any of the more narrowly defined programs or activities receiving federal financial assistance"); *see also Winfrey v. City of Chicago*, 957 F. Supp. 1014, 1024 (N.D. Ill. 1997) ("[E]very program of an entire governmental entity, such as a municipality, is not regulated because some other program or division receives financial assistance. Rather, section 504 continues to regulate each department, agency or similar instrumentality of the local government only if that instrumentality receives federal financial assistance.") (citation omitted). Ms. Farmer did not respond to Town of Speedway's argument or otherwise address the authorities on which it relies, and thus the Court has little trouble concluding—based on the undisputed evidence—that the Clerk-Treasurer's office is not a program or activity receiving federal funds under the Rehabilitation Act. Thus, even if Town of Speedway was Ms. Farmer's employer, she still would not be able to proceed with her claim. Accordingly, Town of Speedway is entitled to summary judgment on Ms. Farmer's Rehabilitation Act claim.

## IV.
### CONCLUSION

For the reasons explained, Town of Speedway's Motion for Summary Judgment is **GRANTED**. [Filing No. 27.] Final Judgment shall issue accordingly.

10/15/2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**